1  STEVEN G. KALAR
   Federal Public Defender
2  ELLEN V. LEONIDA
3  Assistant Federal Public Defender
   450 Golden Gate Avenue, 19th floor
4  San Francisco, CA 94102
5  Telephone: (415) 436-7700
   Facsimile: (415) 436-7706
6  Email: ellen_leonida@fd.org
7

8  Counsel for Defendant,
   DARWIN VILLATORO

9

10                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                          SAN FRANCISCO DIVISION

12

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　PLAINTIFF,<br><br>v.<br><br>DARWIN VILLATORO,<br>　　　　DEFENDANT. | CR 20-069 WHA<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>HONORABLE WILLIAM ALSUP<br>DATE: SEPT. 1, 2020<br>TIME: 11:00 A.M. |

28  CR 20-069 WHA
    Defendant's Sentencing Memorandum
                                1

1. **INTRODUCTION**

Darwin Villatoro grew up in abject poverty, in a small village in Honduras. He came to the United States in search of a better life, but that proved impossible for an illiterate young man with a third grade education, who did not speak English. Instead, Mr. Villatoro found himself living with friends, addicted to drugs, and, ultimately, selling drugs to finance his addiction. Now Mr. Villatoro has been swept up in the government's Tenderloin "initiative." He is charged with three federal felonies as a result of his street-level drug dealing in the Tenderloin neighborhood of San Francisco. Mr. Villatoro intends to plead guilty to all three charges on September 1, 2020. Based on Mr. Villatoro's background, his addiction, and the devastating collateral consequences he faces, a sentence of one year and one day in custody would serve the goals of 18 U.S.C. § 3553(a) with regard to Mr. Villatoro.

2. **A SENTENCE OF ONE YEAR AND ONE DAY IN CUSTODY WOULD BE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO SATISFY THE GOALS OF 18 U.S.C. § 3552(A)**

In determining an appropriate sentence, the court must look to the factors set forth in 18 U.S.C. § 3553, among them the applicable sentencing guideline calculation. *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991. Application of the factors listed in Section 3553(a) to this case supports imposition of the mandatory minimum sentence of one year, plus one day in custody.

**2.1 The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))**

Mr. Villatoro was orphaned at two months old. An aunt and uncle took him in and Mr. Villatoro grew up with their four children. The entire family lived in a three-room shack without running water. Mr. Villatoro's aunt and uncle were kind, hard-working people, but life was very

hard. They could not afford shoes or proper clothing and the family had to spend hours every day just attending to basic human needs. Water had to be fetched from the river. In order to bring his uncle lunch in the fields where he worked, Mr. Villatoro spent two hours a day walking there and back, barefoot. PSR ¶¶47-52.

Mr. Villatoro started working at the age of seven, waking up at 3:00 a.m. to work in the fields until 1:00 in the afternoon. He wanted to go to school but the two-hour daily trek to his uncle's job site made it impossible and he stopped going after three years. Mr. Villatoro still cannot read or write. *Id*. He worked in the fields every day until he left Honduras in search of a better life in this country. Mr. Villatoro's history and characteristics thus warrant the variance he is requesting. *See* 18 U.S.C. § 3553(a)(1).

**2.2 The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))**

The nature and circumstances of this offense similarly support a variance from the advisory guideline range. *See* 18 U.S.C. § 3553(a)(1). Whether caused by gangs, an ineffective government, drug trafficking, or poverty, Honduras currently claims the title of "murder capital of the world."[1] The government is blatantly corrupt and has lost international support because of allegations of human rights abuse.[2] There are also allegations of gang infiltration of Honduras' police force.[3] "According to the State Department, 42 percent of all cocaine headed to the U.S. and 90 percent of all cocaine flights now travel through Honduras."[4] Like others before him, Mr. Villatoro made the perilous, illegal journey to the United States in search of a future free of corruption, gang violence, and poverty.

---

[1] United States Department of State Bureau of Diplomatic Security. Honduras 2018 Crimes and Safety Report, (April 3, 2018). Accessed at: https://www.osac.gov/Pages/ContentReportDetails.aspx?cid=23798

[2] Khan, Carrie, "Honduras Claims Unwanted Title of World's Murder Capital" Parallels (June 12, 2013). Accessed at: https://www.npr.org/sections/parallels/2013/06/13/190683502/honduras-claimsunwanted-title-of-worlds-murder-capital.

[3] *Id*.

[4] *Id*.

CR 20-069 WHA
Defendant's Sentencing Memorandum
3

In the United States, however, Mr. Villatoro was lost. Because he speaks no English and is illiterate, he had trouble finding work. His experimentation with narcotics turned into full-blown dependence and he ended up selling drugs to support himself and his addiction. PSR ¶ 67. Darwin Villatoro is not a drug kingpin. He was a desperate, illiterate drug addict who sold drugs to other addicts in order to finance his own addiction.

### 2.3 The Need for the Sentence Imposed To Promote Respect for Law, Provide Just Punishment, and Afford Adequate Deterrence (18 U.S.C. § 3553(a)(2))

A sentence of one year and one day in custody is just and will promote respect for the law because it is long enough to afford both specific and general deterrence. Mr. Villatoro only has two prior convictions, for which he was sentenced to 110 days (concurrent for both cases). He will have already been in custody twice that long when he appears in court to plead guilty. He understands that he cannot reoffend.

More importantly, Mr. Villatoro is almost certainly going to be deported after he serves his sentence. A term in custody three times longer than his longest (and only) prior sentence, followed by deportation to Honduras sends a strong message to both Mr. Villatoro and the general public that selling drugs has serious consequences.

### 2.4 The Need for the Sentence Imposed To Protect the Public from Further Crimes of the Defendant (18 U.S.C. § 3553(a)(2))

Mr. Villatoro will likely be deported following the conclusion of his sentence. He plans to return to his village, start a family and work hard to support them. PSR ¶ 58. He has a minimal criminal record with no history or violence or weapons offenses. A prison term longer than one year and one day is not necessary to protect the public from Mr. Villatoro.

### 2.5 The Need for the Sentence Imposed To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2))

Today, any sentence longer that the mandatory minimum necessarily subjects Mr. Villatoro to an increased risk of contracting a deadly virus. The Court is well aware of the nature and scope of the coronavirus pandemic. Within the correctional system, the situation is

CR 20-069 WHA
Defendant's Sentencing Memorandum

4

especially dire. Prisons and jails, which lack proper sanitation and means to accomplish social distancing, are tinderboxes. For example, the rate of infection on Rikers Island is over seven times the rate of infection in New York City at large.[5] The CDC has recognized that "Correctional and detention facilities face challenges in controlling the spread of infectious diseases because of crowded, shared environments and potential introductions by staff members and new intakes."[6]

Bureau of Prisons facilities where COVID-19 has been detected have developed epidemics alarmingly quickly and continue to spiral. For example, on March 26, 2020, the first person in the city of Lompoc tested positive for coronavirus.[7] By May 18, over 900 inmates and 17 staff members at FCI Lompoc were infected.[8] The skyrocketing and devastating numbers at FCI Terminal Island reveal a similarly dramatic and deadly explosion. As of June 8, 2020, 700 inmates and 16 staff members had been infected, and there has been a staggering nine deaths already. *Id*. Overall in the Bureau of Prisons system, over 10,000 federal inmates and 1,000 BOP staff have been infected, with 98 federal inmate deaths and one staff member death. The fact that staff members have largely recovered while inmates are dying at such an alarming rate is a clear indication of the BOP's inability to adequately care for infected individuals within the system.

The pandemic also makes time served much more difficult. People incarcerated at Santa Rita Jail and in BOP facilities live in constant fear of being subjected to a guard or a new person transferred into their facility who gives them this deadly disease under circumstances where they

---

[5] Asher Stockler, *More than 700 people have tested positive for coronavirus on Rikers Island, including over 440 staff*, NEWSWEEK (April 8, 2020), found at https://www.newsweek.com/rikers-island-covid-19-new-york-city-1496872

[6] *COVID-19 in Correctional and Detention Facilities — United States, February–April 2020*, CENTERS FOR DISEASE CONTROL AND PREVENTION, MORBIDITY AND MORTALITY WEEKLY REPORT (May 6, 2020), found at https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e1.htm

[7] Willis Jacobson, *Lompoc patient tests positive for COVID-19; first confirmed case in city* (March 26, 2020), https://lompocrecord.com/news/local/lompoc-patient-tests-positive-for-covid-19-first-confirmed-case-in-city/article_2c850540-0735-5616-b615-c674e4c146ea.html.

[8] https://www.bop.gov/coronavirus/

CR 20-069 WHA
Defendant's Sentencing Memorandum

5

are absolutely incapable of taking steps to avoid it. There are no drug or vocational programs and visiting has been suspended. In this context, a sentence of one year and one day in custody will suffice to punish Mr. Villatoro for the crime he committed; no legitimate goal of sentencing is advanced by increasing the risk to Mr. Villatoro's physical health by subjecting him to a lengthy term of incarceration.

### 2.6 The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines (18 U.S.C. § 3553(a)(4))

Mr. Villatoro is in criminal history category III and his total offense level is 21. Based on the combined amount of narcotics Mr. Villatoro possessed during the four days at issue, his offense level is 24.[9] U.S.S.G. § 2D1.1. Three levels should be subtracted because Mr. Villatoro intends to accept responsibility for his conduct by pleading guilty. U.S.S.G. § 3E1.1. The resulting advisory Guideline range is 46-57 months.

Mr. Villatoro joins the government in objecting to the imposition of a two-level enhancement pursuant to Guideline § 2D1.1(b)(14)(B). Because Mr. Villatoro was not in possession of methamphetamine on October 26, 2019, that enhancement is inapplicable.

Probation has already recommended a 33-month downward variance based on Mr. Villatoro's history and the circumstances of this case. Application of that variance to the correct adjusted offense level would result in a sentence of 13 months. For the reasons articulated above, Mr. Villatoro submits that a variance of only one additional month, to a sentence of one year and one day in custody, is appropriate here.

### 2.7 Unwarranted Sentencing Disparity

While the requested sentence represents a variance from the guideline range, the variance is warranted in light of Mr. Villatoro's conduct and history, as well as the additional time he will spend in immigration custody prior to his deportation. Additionally, the sentence is in accord

---

[9] Mr. Villatoro has notified both the government and probation that he withdraws his previous objection to the PSR.

CR 20-069 WHA
Defendant's Sentencing Memorandum

6

with similarly situated defendants engaged in similar conduct swept up in the Tenderloin initiative.

**3. CONCLUSION**

Darwin Villatoro is going to pay for the crimes he committed, first by a term in prison under exceptionally difficult and danger circumstances, then by immigration custody and, ultimately, deportation. One year and one day in custody is sufficient, but not greater than necessary, to serve the goals of 18 U.S.C. § 3553(a) in this case.

Dated: August 25, 2020

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender

   /S/
ELLEN V. LEONIDA
Assistant Federal Public Defender

CR 20-069 WHA
Defendant's Sentencing Memorandum

7